GABRIEL A. JACKSON, State Bar No. 98119
gaby@jjrlaw.com
TODD M. THACKER, State Bar No. 199506
tthacker@jjrlaw.com
JACKSON JENKINS RENSTROM LLP
55 Francisco Street, Sixth Floor
San Francisco, CA 94133
Tel: (415) 982-3600
Fax: (415) 982-3700

Attorneys for Defendant
BATH IRON WORKS CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL McINDOE, as Wrongful Death Heir, and as Successor-in-Interest to JAMES McINDOE, Deceased, and LORAINE McINDOE; PAULINE McINDOE, , as Legal Heirs of JAMES McINDOE,<br><br>Plaintiffs,<br><br>v.<br><br>ASBESTOS CORPORATION, LTD, *et al*.<br><br>Defendants. | Case No.  2:12-cv-09639-RGK-SS<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT BATH IRON WORKS CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION**<br><br>DATE:  August 19, 2013<br>TIME:  9:00 am<br>DEPT:  Courtroom 850<br>JUDGE: Hon. R. Gary Klausner |

Pursuant to Local Rule 56-1, Defendant BATH IRON WORKS CORPORATION submits this separate statement of undisputed material facts in support of its motion for summary judgment:

1. Plaintiffs complain against Bath Iron Works in Negligence and Strict Products Liability.  (Thacker Decl., Exh. "A.")

2. Plaintiffs allege that Mr. McIndoe was the Chief Engineer aboard the USS WORDEN, a ship manufactured by Bath Iron Works, for two years beginning in late 1965

1  or early 1966.  (Thacker Decl., Exh. "D", pg. 69:20-71:18.)

2      3.    Plaintiffs have not to this point provided any evidence that Mr. McIndoe worked with any asbestos-containing material aboard the WORDEN, or that any asbestos-containing material around which Mr. McIndoe might have worked was originally installed by Bath Iron Works during the WORDEN's manufacture.  (See generally Thacker Decl., Exh. "C", Exh. "D," pg. 27:12-22; Exh. "E," pg. 22:3-15.)

    4.    Neither have Plaintiffs provided any evidence regarding the WORDEN's maintenance history.  (See generally Thacker Decl., Exh. "C", Exh. "D," pg. 27:12-22; Exh. "E," pg. 22:3-15.)

    5.    Plaintiffs have not provided any evidence that Mr. McIndoe ever worked with any asbestos-containing material aboard a Bath-Iron-Works-manufactured ship at all, much less which material he might have worked with or how he may have been exposed to asbestos by such work.  (See generally Thacker Decl., Exh. "C", Exh. "D," pg. 27:12-22; Exh. "E," pg. 22:3-15.)

    6.    Mr. McIndoe has passed away, and is therefore unavailable to provide any testimony on these issues.

    7.    Bath Iron Works answered Plaintiffs' Complaint and, among other affirmative defenses, stated that Plaintiffs' claims against Defendant are negated by the "government contractor" defense, including performance of any contracts, and the "sophisticated user" defense.  (See Thacker Decl., Exhibit "B.")

    8.    The Navy issued precise specifications for the construction and repair of its Navy warships, and Navy vessels built by private contractors had to comply with these specifications.  (See Thacker Decl., Exhibit "F," ¶ 13, 17-38.)

    9.    Equipment built and supplied during the construction or repair of Navy ships complied with specifications and rigid conformance to the specifications was necessary to keep sailors out of harm's way.  (See Thacker Decl., Exhibit "F," ¶ 13, 17-38.)

    10.    Government contractors such as Bath Iron Works were required to strictly

adhere to Navy directives in the design, construction, repair, and overhaul of Navy vessels and equipment. (See Thacker Decl., Exhibit "F," ¶ 13, 17-38.)

11. The Navy's contract design package described every piece of material, equipment, and subsystem that the shipbuilder was to incorporate into the warship. (Thacker Decl., Exh. "F," ¶13.)

12. If Navy specifications were not followed by the shipbuilder, the Supervisor's inspectors would reject the shipbuilder's involved work. (Thacker Decl., Exh. "F," ¶17.)

13. Manufacturers were required to comply with these technical specifications in every detail if they wanted the Navy to accept their equipment. (Thacker Decl., Exh. "F," ¶17.)

14. Any and all work performed in the construction and repair of Navy ships, as well as the equipment built and supplied for the ships, was performed to requirements developed and specified by the Navy. Further, such work was typically reviewed and inspected by Navy personnel in the vendors' plants and in shipbuilding and repair yards. (Thacker Decl., Exh. "F," ¶18.)

15. Not only did the Navy specifications describe the physical equipment and material to be used in the ship, they also included instructions for the painting and labeling of ship systems and equipment, as well as the content of instruction manuals to be used in the operation and maintenance of equipment. Shipyards would not have been permitted (either by specifications or as a matter of Navy practice) to attach any type of warning or cautionary statement not required and approved by the Navy. (Thacker Decl., Exh. "F," ¶19.)

16. Shipbuilders were simply not expected or permitted without approval to affix a cautionary statement or warning concerning asbestos that was contrary to the manner in which the Navy chose to handle asbestos as their medical understanding of the hazard increased. (Thacker Decl., Exh. "F," ¶21.)

17. There is no possibility that the U.S. Navy would have allowed a shipbuilder to

1   create and supply a manual for all of the asbestos-containing products on a ship. This
2   would have been duplicative, wasteful, and served no logical purpose while at the same
3   time increasing the possibility for confusion and delay. (Thacker Decl., Exh. "F," ¶23,
4   37.)

5       18.    The Navy had state-of-the-art knowledge regarding the potential risks
6   associated with exposure to asbestos and asbestos-containing products, and had at least
7   some knowledge of the hazards of asbestos by 1950. (Thacker Decl., Exh. "F," ¶24-28.)

8       19.    The Navy's Bureau of Medicine had state-of-the-art knowledge regarding
9   the dangers of asbestos, and the Navy invoked requirements commensurate with that
10  understanding at the time. (Thacker Decl., Exh. "F," ¶29.)

11      20.    The Navy believed that excessive warnings for common shipboard hazards
12  led to apathy and resulting disregard of hazards by Navy personnel. Thus, the Navy
13  would not have permitted (either under the specifications or as a matter of Navy practice)
14  a ship constructor such as Bath Iron Works to attach any type of warning or cautionary
15  statement not required and approved by the Navy, including any statements related to
16  asbestos. Any attempt by a shipbuilder to affix a cautionary statement concerning
17  asbestos to equipment onboard a ship it was assembling would have been both futile and
18  contrary to the Navy protocols for instruction and training relating to use of asbestos
19  materials discussed above. (Thacker Decl., Exh. "F," ¶29-30.)

20  Dated: July 18, 2013                JACKSON JENKINS RENSTROM LLP

By:   */s/ Todd M. Thacker*
      TODD M. THACKER
      Attorneys for Defendant
      BATH IRON WORKS
      CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JACKSON JENKINS
RENSTROM LLP
SAN FRANCISCO

3

DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

The undersigned, counsel for BATH IRON WORKS Corporation, hereby certifies that a true and correct copy of the foregoing STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT BATH IRON WORKS CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION were filed with the Court and served electronically through the CM-ECF (Electronic Case Filing) system to all counsel of record and to those registered to receive a Notice of Electronic Filing for this case on July 18, 2013.

                                                     */s/ Todd M. Thacker*
                                                   Todd M. Thacker

2061425